IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.                        Case No. 11-40023-JTM

CAELA M. WHITE-KINCHION,
  *also known as* CAELA M. THOMAS,

    Defendant.


MEMORANDUM AND ORDER


At its earlier hearing conducted March 11, 2013, the court granted in part and denied in part all pending motions, except for that of the defendant White-Kinchion seeking discovery as to the identity of the government's confidential informants. (Dkt. 74). As the motion was only filed immediately prior to the hearing, the court extended the government an opportunity to file a responsive pleading, which it has now done.

In her March 8, 2013 motion, the defendant requested various information from the government. Specifically, she seeks:

> [1] the names and addresses of any and all unindicted co-conspirators, [2] the date upon which each unindicted co-conspirator entered into the conspiracy and, if such dates are not specifically alleged or known by the government, the order in which such unindicted conspirators entered into the conspiracy, [3] the name/names of the anonymous or confidential informants referred to in the affidavit for a search warrant.

(Dkt. 74, at 1). This is the entirety of defendant's motion, which supplies neither argument nor authority for the production of the requested information.

Although a First Superseding Indictment was entered on March 6, 2013, the new Indictment does not add any new allegations with respect to the charges against White-Kinchion. The court has reviewed the First Superseding Indictment and finds that it does not advance any novel claims or contentions which were not made in the preceding Indictment.

The court denies the requested production. With respect to the identity of the unindicted co-conspirators, the government is not obligated to provide such information, *United States v. Cooper*, 283 F.Supp.2d 1215, 1240 (D. Kan. 2003), the government has otherwise provided discovery as to charged conspirators, and the burden is on the plaintiff to show such information is necessary to her defense. *United States v. Gabriel*, 715 F.2d 1447 (10th Cir. 1983). As noted earlier, plaintiff has made no such showing.

Similarly, the request for the specific dates of the conspiracy is denied. Because "the government is not required to prove exactly when or how a conspiracy was formed or when or how a particular defendant joined the scheme, and as the circumstantial proof on which the government usually relies to prove the existence of a scheme often does not reveal such details, the courts have consistently rejected demands for particulars as to the formation of a conspiracy or the entry into the conspiracy of a particular defendant or confederate." *United States v. Matos–Peralta*, 691 F.Supp. 780, 791

(S.D.N.Y.1988). *See also United States v. Mittal*, No. 98 Cr. 1302, 1999 WL 461293, at *9 (S.D.N.Y. July 7, 1999) (quoting *Matos–Peralta*).

Finally, the court denies the request for additional information as to any confidential informants. The government affirmatively represents that evidence from informants will play no role in its case. Rather, the government will support its allegations solely through live witnesses and documentary exhibits.

When faced with a request for the identity of a confidential informant, the court must carefully balance the defendant's need for such information against the "government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). Disclosure is not required if the informant did not "participate in the transaction in question." *United States v. Reardon*, 787 F.2d 512, 517 (10th Cir. 1986). The burden is on the defendant to show that the informant's testimony is relevant or essential to the fair determination of defendant's case, *United States v. Gordon*, 173 F.3d 761, 767 (10th Cir. 1999). As noted earlier, White-Kinchion's motion makes no attempt to meet that burden.

Because the alleged confidential informant merely set in motion the government's investigation, and the government will be independently proving all of the allegations in the Indictment, the informant is properly viewed as a tipster, and thus "disclosure is not required." *United States v. Martinez*, 979 F.2d 1424, 1426 (10th Cir. 1992). *See Gordon*, 173 F.3d at 767 (no discovery of informant who "here simply provided a lead" for investigators, and "whose identity and testimony are unrelated to

any issue" at trial); *United States v. Dexta*, 136 Fed.Appx. 895, 905 (6th Cir. 2005) (government not required to identify informants who "were involved in setting up the drug [but] did not personally witness the transaction and the government did not rely on their testimony at trial").

The defendant has responded to the government's objections to production by a separate pleading, renewing her earlier motion and raising the ante by moving for discovery of all grand jury testimony. (Dkt. 80). The core of the defendant's argument is a summary of specific statements made by Agent Korby Harshaw in his affidavit in support of the original February, 2007, search warrant for ProActive's records. These include, for example, his statement that he had spoken anonymously to some of the other ProActive nurses.

The defendant then contrasts these specific statements with the government's opposition to her motion to compel the production of confidential informant information, on the grounds that these background sources will not be used at trial and as "mere tipsters," their identities need not be revealed. That is, the government's case will be proved entirely through the billing documents and other live witnesses.

The defendant then suggests, with no evidence and abundant speculation, that Harshaw's affidavit was false, and that the grand jury transcripts will show this.

> Given that the second indictment, *presumably based upon specific testimony before a new grand jury*, has much of the numerical language removed, *questions arise* concerning the differences…. At the very least, this most recent development *suggests* the probability of inconsistency [and] *raises new questions*….

4

> The defendant *presumes* that the original grand jury, whose indictment contained information similar to that which had been presented by Agent Harshaw, actually heard testimony from Agent Harshaw. [S]uch testimony … *may demonstrate* that the Lessards, and not defendant, were the individuals responsible…. In fact, any evidence supporting these claims *may effectively be exculpatory* to the defendant and the government has a duty to provide the same.

(*Id*. at 4-6) (emphasis added).

White-Kinchion points to no specific, substantive differences between the original and the Superseding Indictments, and the claim that Harshaw gave false grand jury testimony is pure speculation.[1] It is also false. The government states in its Response to White-Kinchion's motion that Harshaw, who submitted the affidavit for the original warrant, did not testify before the grand jury, and further that he is not expected to testify at trial. Investigator Darren Brown has appeared twice before the grand jury, but according to the government has never offered any inconsistent statements and will not be testifying at the trial. Harshaw's ProActive confidential informant will not be testifying at trial.[2] The grand jury testimony can therefore supply no valid impeachment material, since the targets of the putative impeachment will not be testifying at trial.

---

[1] Of course, to the extent there is any truly exculpatory information were available to the government, it already has the obligation to produce that information, independent of any direct ruling by this court. *See United States v. Herberman*, 538 F.2d 222 (5th Cir. 1978) (exculpatory material presented to grand jury is subject to *Brady* requirements).

[2] According to the government, evidence in the case has been presented to three grand juries. The first, in Wichita, heard testimony from four alleged co-conspirator nurses. The second, in Topeka, returned the first Indictment after hearing testimony from Brown and nurse reviewer Lisa Landis. The third, also in Topeka, heard from Brown only. Landis is expected to testify at trial, and the government will produce her grand jury testimony as Jencks material. (Dkt. 81, at 4).

"Since the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 n. 9 (1979). "The rule of grand jury secrecy was imported into our federal common law and is an integral part of our criminal justice system." *Id.* Grand jury secrecy is regarded as necessary to the proper functioning of the grand jury. *Id.*

As a result, federal courts have a "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts." U*nited States v. Warren*, 747 F.2d 1339, 1347 (10th Cir. 1984). In *United States v. Evans & Assoc. Constr.*, 839 F.2d 656, 675 (10th Cir. 1988), the court noted the Supreme Court's explanation of the reasons for this rule:

> In particular, we have noted several distinct interests served by safeguarding the confidentiality of grand jury proceedings. First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

(Quoting *Douglas Oil Company v. Petrol Stops Northwest*, 441 U.S. at 218-19).

"Almost uniformly, the federal courts have interpreted the requirement of particularized need literally, and rejected a blanket approach to the determination." *In re Special Grand Jury 89-2*, 143 F.3d 565, 570 (10th Cir. 1998). Because of the "[t]he secrecy

6

the grand jury proceedings is extremely important," a request for production "must be structured to cover only material needed to avoid injustice. *United States v. Molina*, No. 09-40041-RDR, No. 2010 WL 2346393, *10 (D. Kan. 2010) (citations and quotation omitted) (rejecting application for transcripts of all grand jury witnesses, including unindicted co-conspirators).

As a result, "[t]he prerequisites for disclosure of grand jury materials are demanding." *In re Grand Jury 95–1*, 118 F.3d 1433, 1437 (10th Cir.1997) (citations omitted). Mere relevance is insufficient, *United States v. Rising*, 867 F.2d 1255, 1260 (10th Cir.1989), and "secrecy will not be broken absent a compelling necessity for materials." *Grand Jury 95-1*, 118 F.3d at 1437. (citations omitted). Thus, a request to go fishing for useful material will not suffice. *In re Grand Jury 95–1*, 118 F.3d at 1437. *See also Cullen v. Margiotta*, 811 F.2d 698, 715 (2nd Cir.) ("Requests for wholesale disclosures should generally be denied."), *cert. denied*, 483 U.S. 1021 (1987).

Here, White-Kinchion relies in particular on *Evans*, asserting that the factors supporting production "are similar but more compelling." (Dkt. 80 at 7). Thus, White-Kinchion cites the complexity of the case and the number of witnesses, the passage of time, that the grand jury is the only source of "fresh" testimony available, and the fact that there is no ongoing investigation. These were relevant factors, but they will be present in virtually every Medicare fraud case.

*Evans* otherwise has little resemblance to the present action. In *Evans*, the time delay was substantially greater. 839 F.2d at 659 ("some events occurred nearly twenty years ago"). More importantly, there is a fundamental difference in the nature of the

7

evidence. In *Evans*, "the Government's case consisted of testimony of key Government witnesses and accomplices and their testimony was largely uncorroborated." *Id*. In the present case, the government's case does not rest on uncorroborated witness testimony, but on ProActive's extensive records and other documents, supported by live witnesses and experts to place those documents in context. The government will also present the testimony of the four alleged co-conspirator nurses, but it disclosed the grand jury testimony of these witnesses to White-Kinchion nearly two years ago, long in advance of any requirement under the Jencks Act. 18 U.S.C. § 3500.

Finally, citing a variety of cases, defendant argues that the discovery is also available under Jencks, *See, e.g., Goldberg v. United States*, 425 U.S. 94 (1976) and *United States v. Procter and Gamble Co.*, 356 U.S. 677 , 683 (1958). But cases such as *Goldberg* simply recognized that grand jury testimony may be produced consistently with the Jencks Act if the defendant presents a particularized showing of need. Similarly, in *Proctor and Gamble*, the Court again noted that in some cases of particular need grand jury secrecy may be relaxed:

> They [strong policies against disclosure] are present here because of the policy of secrecy of grand jury proceedings. We do not reach in this case problems concerning the use of the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like. Those are cases of particularized need where *the secrecy of the proceedings is lifted discretely and limitedly*. We only hold that no compelling necessity has been shown for the wholesale discovery and production of a grand jury transcript under Rule 34. We hold that a much more particularized, more discrete showing of need is necessary to establish 'good cause.' The court made no such particularized finding of need in case of any one witness. It ordered that the entire transcript be delivered over to the appellees.

*Id.* (emphasis added).

The Tenth Circuit summarized the rules with respect to the production of grand jury records in *United States v. Edge*, 315 Fed. Appx. 92 (10th Cir. 2009), including the need for particularized and limited production:

> [A] presumption exists against disclosure of grand jury testimony unless the moving party satisfies the Supreme Court's *Douglas Oil* test. *In re Lynde*, 922 F.2d at 1451-52. Under *Douglas Oil*, parties seeking grand jury materials pursuant to Rule 6(e) must show a "particularized need" *and* "that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Id*. (quoting *Douglas Oil*, 441 U.S. at 222, 99 S.Ct. 1667).

(Emphasis in *Edge*).

The production White-Kinchion is seeking here is not targeted or limited. Rather, the discovery sought by the defendant is very broad, requesting "the complete [grand jury] transcripts, including witness testimony, questions by the prosecutors and grand jurors, and any legal instructions provided by the prosecutors." (Dkt. 80 at 9). This is precisely the wholesale reproduction of grand jury information rejected in cases such as *In re Grand Jury 95–1.*

The court finds the defendant has not shown a particularized need for grand jury testimony. She has not shown how the marginally slimmed-down Superseding Indictment establishes that the original 2007 affidavit for warrant was false. She has not shown why the government's representation – that it will prove the charges in the Superseding Indictment solely through live witnesses and documents, and not by any reliance on the original tipsters – should not be accepted at face value. Finally, her

requested discovery is not narrow and limited, but seeks a broad disclosure of all grand jury testimony, under circumstances are which are typical of ordinary health care fraud cases.

IT IS ACCORDINGLY ORDERED this 3rd day of April, 2013, that the defendant's Motions for Discovery (Dkt. 74, 80) are hereby denied.

 s/ J. Thomas Marten  
J. Thomas Marten, Judge